Mosher agt. Heydrick.

---

## SUPREME COURT.

### HENRY W. MOSHER agt. JESSE A. HEYDRICK.

Where the *affidavit* is substantially an allegation forming a part of the *statement* of confession of judgment preceding it, stating that the matters before stated are true, and being signed by the party making it, it is a *sufficient signing of the statement*, under the provisions of the Code.

Where the *affidavit* states that the facts stated in the above confession are true, it is in effect that the *statement* is true, and not merely that the *facts only* are true.

*Notaries public*, by the act of 1863 (*Sess. Laws* 1863, *chap.* 508), were authorized to take affidavits and certify the same in all cases where justices of the peace or commissioners of deeds might, at the passage of the act, take and certify the same. Assuming that an affidavit should only be taken in the county where the notary resides, or in which he was appointed, the presumption is that he acts where the *venue* of the affidavit is laid, and that he resides there. Consequently, it is unnecessary to add to his signature his *place of residence*.

*Clerks of counties*, are by statute, classed among the judicial officers. An affidavit taken before a notary public may be used before any county clerk, and under section 384 of the Code, judgment may be entered with any county clerk, and not merely in the county where the statement authorizing it was verified.

*Second District, Brooklyn Special Term, November*, 1865.

THIS is a motion to vacate a judgment on confession, for irregularity.

WM. HENRY ARNOUX, *attorney for judgment creditors of Jesse A. Heydrick, and for motion.*

I. There is no signature to the statement. This the Code imperatively requires (§ 383). This point has been twice before the supreme court, in the first instance, *Post* agt. *Coleman* (9 *How.* 64). The court by ingenious special pleading, on the authority of *Haff* agt. *Spicer* (3 *Caines,* 190), and *Jackson* agt. *Virgil* (3 *Johns.* 540), that an affidavit need not be signed, held that the signature to the affidavit following the confession being unnecessary, the signature must be deemed made to the confession itself. In the second instance, *Purdy* agt. *Upton* (10 *How.* 494), in this (second) district, the judge based his decision on a different ground, namely, that the confession and verification were one and the same instrument.

The court in the first case overlooked a decision made by the chancellor in 1844, *Hathaway* agt. *Scott* (11 *Paige,* 173), in which he reviewed the decision in *Caines* and *Johnson,* and came to the conclusion that they were not sound law, holding that "where the verification is in the form of an affidavit, the name of the deponent *must* be subscribed at the foot of the affidavit," and to it he applies the decisive test that an action of perjury would not lie in such a case unless the affidavit containing the name of the party was in the affiant's handwriting. This latter suggestion, I conclude, from an examination of the early cases, the chancellor deemed to be the fact and explanation of the decisions, for they were apparently mere practice motions, wherein the affidavits were made by the attorneys.

It appearing then that the court in the first case erred in the law as it then stood, let us critically examine the second case. One reason that the learned justice gave for deeming them to be one was, that they were on the same page. That reason does not apply here, for they are on different pages. But that cannot be sound law, for it is held that a single paper that secures a debt and the costs on appeal, is in law two undertakings, one for costs, and the other for the debt, and may be good for one and not

Mosher agt. Heydrick.

for the other. (*Code*, § 340; *N. Y. Cent. Ins. Co.* agt. *Stafford*, 10 *How.* 344, *Court of Appeals.*) This supersedes the old warrant of attorney and cognovit; by 3 *Geo.* 4, *chap.* 39, there were required the warrant, attestation and defeasance, and an affidavit of the time of the execution thereof. Could the signature to the affidavit of execution be deemed a signature of the warrant? I can find no such decision or intimation in the English digests that would be a parallel case.

But does the Code make them one? It requires of the defendant two separate and distinct acts, *signature* and *verification.* Verification can no more take the place of signature, than signature can supply verification. The rule here needs to be more rigidly applied, because the name of the party making the confession does not occur in the confession. From the foregoing reasoning, the conclusion is inevitable that the signing of the affidavit was not the signing of the statement required by the Code.

II. The statement was not duly verified. He swears "that the *facts* stated in the above confession are true, and further he says not." Could an action for perjury lie against any man who swears that the *facts are true?* He might as well say that the lies are false. It is an axiom that nobody can dispute. The facts *must* be true.

In *Fitzhugh* agt. *Truax* (1 *Hill*, 644), the court held that an affidavit of merits was insufficient wherein the party swore that he had stated " the facts of the case," instead of *the case.* Now if an interpolation of this kind can with safety be permitted in any affidavit or verification, it would be in an affidavit of merits, where the party must state facts and rely on his counsel for the law. Yet the court held as above, and that decision is so fully recognized by the bar, that with all the laxity of the present practice no one has ever heard of a similar affidavit of merits.

But there is more to a confession of judgment than a mere statement of facts. The Code distinctly requires two

things (§ 383), and they are separately numbered (*q. v*). The first to apply to *all* cases, and the second and third in the alternative. The Code applies to the latter clause only the word *facts*, and requires the whole statement to be sworn to, for the *facts* may be true as he swears, but it may not be true that he is willing that judgment may be entered. This provision, that the admission of the debt shall not be sufficient, but that the party must consent to the entry of judgment, seems to arise from the old provision in warrants of attorney, that no warrant of attorney executed by a person in custody of the sheriff should be valid unless there was an attorney present on his behalf to advise him. (*Reg. Gen. K. B. E. T.* 4 *Geo.* 2, *and Id. K. B. C. P. and Exch. H. T.* 2 *Will.* 4.) That is he must swear to consent as well as indebtedness. By the affidavit itself he negatives all presumption as to consent, for he expressly declares that beyond the facts " he saith not." Therefore, if the first paragraph is not included in the second, he has only partially verified the confession.

2. The verification is insufficient, because the notary public before whom the affidavit was made, did not state his place of residence. The venue was laid in the city and county of New York, and the officer signs the jurat "Isaac L. Miller, Notary Public." Originally, that is prior to 1859, commissioners of deeds alone could take affidavits to be read in courts of law. They are local officers. (1 *R. S.* 102, *orig. paging*, § 13 ; *People* agt. *Hascall*, 18 *How.* 119.) In 1859, the legislature (*Laws* 1859, *chap.* 360, *p.* 869) conferred on notaries public, in addition to their then present powers, authority to administer oaths under the same rules, regulations and requirements prescribed to commissioners of deeds. The statute requires that commissioners *must reside* within their respective towns. *Quoad hoc*, notaries are local officers, and must affirmatively show their jurisdiction, for it will not be presumed. (This principle needs no citation of authorities.) The laying of the

venue is sufficient for a commissioner, because beyond his county he ceases to exist, but the notary as notary, is a state officer, and, therefore, when he attempts to act as a commissioner, his right must affirmatively appear by adding after his name and office, that he resides in the city of New York, or wherever he attempts to act, or words equivalent thereto. This is the practice of the notaries in New York.

III. The officer had not jurisdiction. The defect above stated is a fatal one to jurisdiction, for nothing can be shown *dehors* the record to uphold the jurisdiction, if the foregoing objection is good. Pursuing the law strictly advances the ends of justice, rather than varying the law to meet the exigencies of each case.

But in another respect the officer had not jurisdiction, because if properly the venue of the title was in Kings county, the verification was in New York.

IV. The clerk had not jurisdiction to enter the judgment. The Code distinctly legislates that there is no action in the cases of confession (§ 382). And where there is no cause pending there is no title; the title is a nullity. (*Haight* agt. *Turner*, 2 *Johns.* 371; *People* agt. *Tioga C. P.* 1 *Wend.* 291; *Humphrey* agt. *Cande*, 2 *Cow.* 509; *Millikin* agt. *Selye*, 3 *Denio*, 54.) And in England, in a case directly in point, in entering up a judgment on warrant of attorney, the affidavit was not entitled in any cause, and the court held it sufficient (*Exparte Gregory*, 8 *B. &. C.* 409). The court then in examining this judgment, will disregard the title as a nullity. There was, therefore, nothing in the confession itself that warranted the clerk of Kings county to enter up judgment. The verification, as appears by the venue, was made in New York, and there was no action pending. It will not be contended that at the common law the certificate of a commissioner could be read anywhere, for such officers are of modern origin, and their powers and privileges are defined by statute. It is only where the action, " cause, matter or proceeding " is pend-

ing, that the certificate is of any avail (2 *R. S.* 284, § 49). At the common law suitors had to appear before the court; there was no other method of taking testimony, and also in chancery they had to appear to enable the court to pronounce judgment on the merits (*Blake's Chancery,* 99), and, therefore, writ of sequestration issued (3 *Black. Com.* 444). Then came special commissioners appointed by the court, then commissioners to take testimony, and all the modern machinery of perpetuating evidence and administering oaths; without statute authority these acts would be null and void, but the legislature finding the beneficial results flowing from the appointment of supreme court commissioners, directed that certain officers should in every county have power to perform their acts, and it directed the mode in which they should perform them, and the effect of their acts. In certain cases, and they are specified, their acts have the effect of testimony. The court cannot legislate to extend the effect of their acts, and they are not testimony where no action is pending, beyond their county. The judgment, therefore, should have been entered in the city and county of New York, and the transcript filed in Kings county. The clerk of Kings county had no jurisdiction to enter the judgment at all. If this conclusion is wrong because the title has some effect, then the clerk was in error, because the verification should have been in Kings county, before some officer there authorized to administer an oath. They must be impaled on one horn or the other of the dilemma.

We cannot here investigate the *bona fides* of the transaction. It seems wonderful that the plaintiff would so freely lend money one day and require security the next, without some change being manifested in the condition of the defendant. Our belief is that the transaction was a fraud on the creditors, but we do not intrude it upon the court on this motion, because of its manifest impropriety,

and because we believe that we are right in the conclusion that the judgment cannot stand, and must be set aside

HUGHES & NORTHUP, *for plaintiff, in opposition to the motion.*

Preliminary objection. It does not appear by the papers that Fowler, the moving party, has a valid judgment against Heydrick, or any judgment in which the court had jurisdiction of either the person of the defendant or the subject matter of the action (11 *Paige,* 173).

I. The statement was properly signed by defendant. The signature at the end of the verification was sufficient, and was a substantial compliance with the statute. (9 *How.* 64; 10 *Id.* 494; *Voorhies' Code, 8th ed. p.* 728.)

The affidavit was duly verified. By *chapter* 508 (*p.* 880), *Session Laws of* 1863, notaries can take affidavits in *all* cases where a justice of the peace *or* commissioner of deeds can. The statement being duly signed and verified, the clerk had jurisdiction to enter judgment.

II. The judgment in favor of Fowler is void for want of jurisdiction.

1. There was no proof of due diligence made to the court granting order for publication (*Code,* § 135). It does not appear that plaintiff ever made or caused inquiries to be made at boarding house of Heydrick.

2. The affidavit of Fowler shows Heydrick was a resident of "*Heydrick Wells, Venango county, Pa.,*" and the order directs the summons and complaint to be deposited in the postoffice, directed to Heydrick at "Heydrick Wells, Venango county, Pa.," and the affidavit of depositing shows that this order was not complied with. They were directed to Heydrick at "Heydrick Wells, Penn.,"—no county is named. The order must be complied with before a party can claim any benefit under the order. It does not appear how many "Heydrick Wells" there are in Pennsylvania.

*It is enough that it was not directed to the " Heydrick Wells, Venango county, Pa."* The order was not complied with.

3. There is no legal proof of publication for six weeks in the Evening Post newspaper. The first publication was on the 27th of May, and the affidavit of publication was made on the 29th June, less than five weeks. There was no publication in the sixth week. The case of *Olcott* agt. *Robinson* (21 *N. Y.* 150), only holds that it is enough to publish any time during the week.

4. The affidavit on which the order for publication was granted was void for want of a stamp. No legal proceedings were then pending, and of course a stamp must be used. These are jurisdictional questions. In *Cook* agt. *Farren* (34 *Barb.* 95), which was a general term case, it is said by the court: "but the statutory proceedings for acquiring jurisdiction of absent defendants must be strictly complied with to give the court jurisdiction. The jurisdiction is strictly statutory, and can only be acquired in the mode prescribed in the statute." (*See also Hallett* agt. *Righter*, 13 *How.* 43; *Kendall* agt. *Peabody*, 14 *Id.* 380.) Fowler's judgment being void, he has no standing in court, and cannot move to set aside.

III. By rule 25, Fowler could enter no judgment until attachment was issued and levied, and that fact appeared by affidavit to the court ordering judgment, and affidavit must be attached and filed with affidavits of publication and undertaking given, none of which was done. This alone would set aside Fowler's judgment. (9 *Abb.* 66; 17 *How.* 106.)

LOTT, J. After a careful examination and consideration of the argument presented in the able and elaborate brief of the counsel of the applicant, and urged on the hearing of the motion, I am unable to sustain him in any of the grounds on which he asks to set aside the judgment of Mosher, for irregularity. The first assigned is, that the

statement was not signed by the defendant. This objection is decided against him in the cases *Post* agt. *Coleman* (9 *How. Pr. Rep.* 64), and *Purdy* agt. *Upton* (10 *How.* 494), and I see no reason for departing from those decisions. The case of *Hathaway* agt. *Scott* (11 *Paige*, 173), cited by him, is not in conflict with either of them. There the name of the petitioner was not signed to the petition nor to an affi-. davit verifying it. It appears from the chancellor's opinion, and the statement of facts preceding it, that the only evidence of the verification was the certificate of the officer who administered the oath subjoined to the petition; and in such case, the chancellor says, the name of deponent should be subscribed to the petition, but he also says, that " when the verification of a bill or petition is in the form of an affidavit, the name of the defendant must be subscribed at the foot of the affidavit." That case is an authority in support of, rather than in conflict with the first mentioned decisions. The affidavit in the case before us is substantially an allegation forming a part of the statement preceding it, stating that the matters before stated are true, and being signed by the party making it, is a sufficient compliance with the requirements of the Code in that respect.

The second ground of objection is, that the statement was not duly verified by the oath of the defendant, and it is insisted that the allegation in the affidavit, "that the facts stated in the above confession are true," is not a verification of the statements made therein. The counsel says that a party might as well say " that the lies are false. It is an axiom that nobody can dispute; the facts must be true." I do not construe the terms as he does. The affidavit must be construed in connection with what precedes it. The confession contains several statements of different matters, not merely those out of which the indebtedness arose, but the further facts that he made the confession of the debt, and authorized the entry of the judgments there-

for, and when it is said that the facts stated in the above confession are true, it is in effect that the statement is true. The Code authorizing the confession, provides that the statement shall, among other things, state concisely the facts constituting the debt or liability, and evidently in the use of that word refers to the matters and circumstances on which such debt or liability is founded, and does not admit of the narrow construction put on it by the counsel. In the case of *Fitzhugh* agt. *Truax* (1 *Hill*, 644), cited by the counsel, the words used in the affidavit of merits were, " that he has fully and fairly stated the facts of his case," and not as stated by him, the facts of the case instead of the case, showing that only on one side of the controversy had he been advised by counsel.

The third ground of objection is, that the verification was not made before an officer of competent jurisdiction. The affidavit appears to have been made before a notary public, in May, 1865, and the venue is the city and county of New York, and it is insisted by counsel that it was necessary for him to add to his name his place of residence, so as to show his jurisdiction to act. By chapter 508, of the laws of 1863, notaries public were authorized to take affidavits and certify the same, in all cases where justices of the peace or commissioners of deeds might, at the time of passage of the act, take and certify the same. Assuming that said affidavit should only be taken in the county where the notary resided, or in which he was appointed, there is nothing to show that it was taken out of his jurisdiction; the presumption is that he acted where the venue of the affidavit is laid, and that he resided there. It is conceded by the counsel that such a presumption arises in reference to a commissioner of deeds, without adding to his signature his place of residence, because, he says, that beyond his county he ceases to exist; but he contends that the case is different with a notary, who, it is claimed, is a state officer, and, therefore, when he attempts to act as a

Mosher agt. Heydrick.

commissioner, his right must affirmatively appear by adding after his name of office that he resides in the city of New York, or words equivalent thereto. I am unable to appreciate the force of the distinction. It would seem to be a sufficient answer to the position contended for, that the notary in taking an affidavit does not pretend to act as a commissioner, he acts by virtue of his appointment, and may take affidavits in all cases where commissioners of deeds could take the same at the time of the passage of the act referred to, and if he is a state officer it is by no means clear that he cannot act in every part of the state (*see* 1 *Rev. Stat. p.* 312, 314); but in the discharge of that new power he can only exercise it within the place of his residence or appointment; he in that case stands in the same position as a commissioner of deeds or a justice of the peace, and I see no more reason for the designation of his residence in addition to his name in his case, than that of the commissioner or justice. He, as well as those officers, are then officers of like and equal jurisdiction, and alike limited as to the locality in which their power can be exercised, and the presumption attaches alike to each of them, that he is an officer acting within his proper jurisdiction, and that the place of such jurisdiction is indicated by the venue. I may add that the objection growing out of the want of designation of the place of the notary's jurisdiction is not stated with sufficient certainty as a ground of irregularity, to be available as such. If it had been distinctly stated, it might have been shown where he acted, and that he had authority to act where he did. It is competent to show such authority in support of a proceeding, where it is assailed.

The last ground of objection is, that the clerk of the county of Kings had no jurisdiction to enter the judgment. Assuming that the title of the confession referring to the court and the names of the parties, is, as contended for, a nullity, I see no reason why the judgment or the confession

could not be entered up in Kings county. Affidavits taken before certain officers (including now notaries public), when required or authorized by law in any cause, matter or proceeding (except in certain cases not applicable to the present), and certified by such officer, may be read before any officer, judicial, executive, or administrative, before whom any such cause, matter, or proceeding, may be pending. (*See* 2 *Rev. Stat. p.* 284, § 49.) The provision does not limit the use of them (as would seem to be the argument of counsel) " to actions pending," but is sufficiently broad to extend to all cases where affidavits (except to those above referred to) are required to be used in courts, or before officers of the classes designated.

The clerk of a county is classed among the judicial officers, in the classification of civil officers (1 *Rev. Stat. p.* 96). The affidavit in question, might, therefore, be used before any county clerk, and under section 384 of the Code, the judgment might be entered with any county clerk, and not merely in the county where the statement authorizing it was verified. There is, therefore, no ground for the last objection. I have thus gone over and considered all the objections urged against the judgment in question, in deference to the zeal and apparent confidence of the counsel in them, as well as the importance of some of the positions taken.

The result is that none of them are well founded, and the motion must be denied with $10 costs, to be paid by the party on whose behalf it is made.