E. A. MILLIGAN et al., Appellees, v. WILLARD ZELLER et al., Appellees; ARMOUR GRAIN COMPANY, Appellant.

**AFFIDAVITS: Sufficiency of Jurat.** The jurat to an affidavit is sufficient, even though it names no venue, if the notary signs *as such,* and attaches a proper seal. Judicial notice will be taken of the county of his appointment, and the presumption indulged that he acted within his jurisdiction.

**MECHANICS' LIENS: Proceedings to Perfect—Fatal Break in Account.** The time for filing claims for liens may not, as against subsequent purchasers or incumbrancers, be extended by the expedient of furnishing articles for the building long after it was mutually treated by contractor and owner as completed.

*Appeal from Greene District Court.*—E. G. ALBERT, Judge.

JANUARY 15, 1924.

ACTION to foreclose a real estate mortgage. Appellant was made a party defendant, as the holder of an alleged mechanics' lien upon the property, and sought by its answer to have said

lien established as superior to the lien of plaintiff's mortgage. The court decreed foreclosure of the mortgage, and established the same as superior and senior to appellant's mechanics' lien.— *Affirmed.*

*J. A. Henderson,* for appellant.

*Wilson & Harris* and *R. G. Howard,* for appellees.

FAVILLE, J.—The defendant Zeller is the owner of the real estate involved in this action. On October 30, 1920, Zeller executed and delivered to the plaintiff a certain mortgage upon said real estate, which mortgage was duly filed and recorded on said date. On November 17, 1920, appellant filed its mechanics' lien, against a portion of the real estate, in the office of the clerk of the district court. The evidence shows that, on or about the 25th of April, 1919, Zeller entered into an oral contract with appellant, by which appellant undertook to furnish the material for the construction of a residence upon real estate owned by Zeller. Zeller employed a carpenter to take charge of the work of constructing the residence, and appellant furnished, at different times, the material which went into the construction of said house. It is the contention of appellant that the last of such items was furnished on the 20th of August, 1920. Two propositions are presented for our consideration. The first involves the sufficiency of the affidavit to support the mechanics' lien; the second involves the question as to whether or not the material furnished on the 20th of August, 1920, was furnished under the original contract with Zeller. If not, the mechanics' lien was not filed in time.

I. The affidavit in question contains the following recitals:

"Affidavit for mechanics' lien.
"State of Iowa,.......... County, ss:"

The affidavit recites that it is made by one Eckert, an.agent for appellant, which is stated in the affidavit to be a corporation, duly incorporated under the laws of the state of New Jersey, and authorized to transact business in the state of Iowa, "and engaged in the management and operation of a lumber yard in the

1. AFFIDAVITS: sufficiency of jurat.

town of Jefferson in Greene County, Iowa." It is also alleged in the said affidavit that appellant furnished Zeller with building material for a house on certain described real estate located "in the town of Jefferson, in Greene County, Iowa." The affidavit is signed by the affiant Eckert. The jurat attached thereto was as follows:

"Subscribed and sworn to before me by F. H. Eckert this 17th day of November, 1920. H. E. Richardson, Notary Public in and for said county."

The impression of the notarial seal which was affixed to said affidavit contained the words: "H. E. Richardson, Notarial Seal, Greene County, Iowa."

It is contended by appellees that the affidavit is fatally defective in two particulars: (1) because no venue is stated therein; and (2) because the notary's signature is insufficient.

Code Section 4673 provides as follows:

"An affidavit is a written declaration made under oath, without notice to the adverse party, before any person authorized to administer oaths within or without the state."

In some jurisdictions, it has been held that no presumption can be entertained as to where an affidavit was made, if no venue is stated therein, and that the failure to state the venue is fatal to the validity of the affidavit. We think, however, that the greater weight of authority and the better reasoning are that the courts should indulge the presumption that the officer who took the affidavit acted within his jurisdiction, and that the failure to recite the venue in the affidavit is not fatal to its validity. *Snell v. Eckerson,* 8 Iowa 284; *Goodman v. Litchfield,* 67 Iowa 691; *Turner v. Loomis,* 146 Iowa 655. See, also, *Reavis v. Cowell,* 56 Cal. 588; *Avery v. Good,* 114 Mo. 290 (21 S. W. 815); *Young v. Young,* 18 Minn. 90; *Lee v. Crawford,* 10 N. D. 482 (88 N. W. 97); *State v. Henning,* 3 S. D. 492 (54 N. W. 536); *Hansford v. Snyder,* 63 W. Va. 198 (59 S. E. 975); *Albright v. United Clay Prod. Co.,* 21 Del. 198 (62 Atl. 726); *Cox v. Stern,* 170 Ill. 442 (48 N. E. 906).

II. It is contended by appellees, however, that the jurat is fatally defective in that the signature and description of the officer are insufficient to show a proper authentication.

Our Code, Section 3092, provides for the preservation of a

mechanics' lien, and requires that the party who wishes to se-
cure such lien shall file with the clerk of the district court of
the county in which the building to be charged with the lien is
situated, a verified statement, or account, of the demand due
him.    The statute requires that the itemized statement which
must be filed shall be one which shows on its face that it is a
sworn statement.    *McGillivray Bros. v. District Twp. of Barton,*
96 Iowa 629.

Was the signature to the affidavit defective?

In *Stoddard v. Sloan,* 65 Iowa 680, we considered an affi-
davit in a case involving a tax deed. The affidavit contained the
caption, "State of Iowa, Woodbury County." The jurat was
signed by the officer with the sole designation "notary public."
The seal was attached to the jurat. The contents of the seal were
not shown in the record, but we assumed that it was the proper
seal prescribed by the statutes, and did show that the notary
was a notary public of Iowa.    We said:

"Steadman's seal, if it was what we may assume it was,
purported to show that he was a notary public of Iowa, and we
may, we think, take notice that he was such in fact.    Can we
go further, and take notice that he was a notary public for
Woodbury County?    It appears to us that we can.    His appoint-
ment for a particular county was necessarily involved in the
appointment itself.    The same public record which shows his
appointment must show for what county he was appointed.    It
is probably true that we would not take notice of any act of
Steadman's that did not purport to be done by him in his of-
ficial capacity.    Now, the objection urged, as we understand, is
that the act in question does not properly purport to be an
official act; for, while Steadman subscribed himself as notary
public, his true office, if he was competent to administer the
oath, as claimed, was that of notary public for Woodbury
County.    So it is said that he did not, in a proper sense, attach
his official designation.    But to hold the doctrine contended for
would be to make a very technical ruling, and we are unwilling
to go that far, and especially as the effect might be to upset a
great many and very important interests."

In the case at bar, no venue is stated in the affidavit, except
"State of Iowa,..........County." The notary public at-

tached his signature to the jurat, followed by the words, "notary public *in and for said county.*" It may be conceded that the words "in and for said county" were meaningless; for they referred to no county mentioned, and the affidavit is in the same situation as though the officer had merely described himself by the words "notary public," and attached his seal. The seal affixed to the affidavit contained the name of the notary, and also the words, "Notarial seal, Greene County, Iowa." The seal shows on its face that the notary was a notary public of Iowa, as required by Code Section 374. Following the rule in the *Stoddard* case, we can take notice of the fact that Richardson was a notary public for Greene County. His appointment for that particular county was necessarily involved in the appointment itself, and the public record which shows his appointment must show for what county he was appointed.

It is argued that the words "Greene County" on the seal are not required by statute to be placed there, and add nothing to the notary's signature. This may be conceded, for the sake of the argument. Eliminating these words on the seal from consideration, and also the words "in and for said county," we still have a jurat authenticated by the signature of the notary public, attested by a notarial seal which complies with the requirements of the statute, and, following the signature, the designation of the officer as a "notary public." It is contended that it is not sufficient for the notary, in subscribing to a jurat, to merely describe his official title as "notary public," without the further designation of the county in which he has jurisdiction. As pointed out in the *Stoddard* case, there is an apparent distinction between the requisites of a signature of a notary public to an acknowledgment and to an affidavit.

It is not required that a notary, in subscribing to a jurat, shall designate the county in which he is acting. It is sufficient if he describes himself as a "notary public," and authenticates his signature by a proper seal. It will be presumed that he acts within his jurisdiction.

We are of the opinion that the affidavit in this case sufficiently complied with the legal requirements to constitute a valid affidavit in a proceeding of this character. As bearing on the question herein discussed, see *Mackie v. Central Railroad of*

*Iowa,* 54 Iowa 540; *Black v. Minneapolis & St. L. R. Co.,* 122 Iowa 32; *Stone v. Miller,* 60 Iowa 243; *Barber v. DeFord,* 169 Iowa 692, 705; *Smith v. Sherman,* 113 Iowa 601.

III.   On or about April 25, 1919, Zeller entered into an oral contract with appellant, by which appellant agreed to furnish the material for the construction of the residence in ques-

2. MECHANICS'
LIENS: proceed-
ings to perfect:
fatal break in
account.

tion.   The material was furnished as needed, and various estimates were made, from time to time, of the material required.   The house was completed early in the spring of 1920, except as to certain screens, and Zeller took possession.

On June 4, 1920, the carpenters returned, for the purpose of putting in the screens on the house, and finished the job, and left June 11, 1920.

The original plan for the house called for a latticework under the side porch, but this was changed before the work was completed, and, as we understand the record, a window was put on the outside of the porch, but none on the inside; and in August, when the outside window was opened, the bugs and flies got under the porch, and Zeller's wife suggested that he had better put a screen in this place.   Accordingly, on or about August 20th, Zeller purchased two additional items of material from appellant.   These consisted of 24 feet of screen moulding and 132 feet of yellow pine doorstop, the aggregate charge for which was $5.78.

The plaintiff's mortgage was filed for record on October 30, 1920, and appellant's mechanics' lien was filed on November 17, 1920.   Unless the item of August 20th is properly included in appellant's account, its lien was not filed in time.

The record in the case is quite voluminous, in view of the narrow issue involved on this fact question.   It would serve no useful purpose for us to review it in detail.   We are satisfied from an examination of the record that the item of August 20, 1920, was not part of the material contemplated by the parties under the original contract, nor was it included in any of the estimates for the construction of the building.   The carpenter testified that the building was considered by him as completed at the time he finished the job on June 11, 1920.   At the request of his wife, and to serve his own purpose, after the build-

ing had so been completed and used for some months, Zeller purchased the small amount of material necessary to make the screen for the cellar window in question. There is no evidence that any portion of the material purchased in August was used for any other purpose. There is no contention whatever that, when the carpenters were discharged, in June,. either they, the appellant, or the owner, Zeller, supposed or claimed that the house was in any way unfinished, or that anything would be thereafter supplied by appellant for its completion.

We think that the case is of the character where the space of time between the items and the fact that the item of August 20th was furnished for a purpose not contemplated by the parties in the construction of the house amply support the conclusion that the work had ceased, and that the contract had been fully completed in June. We concur in the conclusion of the trial court that the purchase of the material for the construction of the screen for the window did not serve to extend the time for filing a lien upon the building that had been completed the June previous. We recently had a very similar situation before us in *Denniston & Partridge Co. v. Luther,* 194 Iowa 464, where we reviewed the authorities. It is unnecessary that we repeat what we therein said.

We reach the conclusion that the item of August 20, 1920, could not properly be included as a part of a continuous account for which appellant could maintain its lien. It therefore follows that appellant's lien was not filed in time, and it was junior and inferior to the plaintiff's mortgage. The decree of the trial court on this question was in accordance with the facts as we find them to be, and is sustained by the law. It therefore follows that it must be, and it is,—*Affirmed.*

ARTHUR, C. J., EVANS and PRESTON, JJ., concur.